Good morning, your honors. My name is Myra Sun and I represent the appellant, Loren Dodds. We briefed three issues in this appeal. He was convicted of one count of possession with intent to distribute marijuana found at a location that was the subject of a search warrant. The other two issues, the two issues that I briefed, which I would prefer not to do, I raised regarding firearms, testified to about a witness, and restitution, which I do believe the government has conceded is not, was not appropriately ordered. As long as it's conceded, is it? I'm sorry? The counsel for the government is acknowledging it, so that's fine. So I'd like to focus on the district court's denial of the suppression motion in this case. Our first challenge is to the adequacy of the oath and affirmation, which is required by the Fourth Amendment. There was an oath and affirmation. Your challenge is to its recordation, correct? To its recordation, and that, I think, goes overall to its sufficiency, because it was recorded. I don't understand what happened here. As I understand it, one of the officers called the judge. One of the officers. And over the phone took an oath and said, here's the information I want to give you. That's not contested. Well, he was out in the field at the house. I think, Your Honor, what we do contest, because there is no recordation, we believe that there is no proof of exactly what the issuing judge heard. That's fair. I understand that argument. I just want to make sure there's no dispute that the officer took an oath over the phone with the judge. At least there's evidence that the officer took an oath over the phone. There's evidence, correct, from the trooper. And there's no contrary evidence other than the fact that the recordation didn't occur until later. And that the issuing judge never affirmed that he gave an oath to this. Okay, so is your, because there's two different challenges here. One's constitutional and the other one is semi-rules based, because it was a state warrant. The constitutional one has to be on oath or affirmation. Correct. And the officer says, I gave an oath. The officer says, I gave an oath, and that is certainly evidence that I gave an oath. The judge didn't testify. The judge didn't testify. The judge didn't even later approve his little affidavit and put his initials on it and say, this is what I heard that day. So, assume the officer gave an oath. If the officer gave an oath, then the question is whether there is evidence. Because we have to view the facts in the light most favorable to the government. The issue is whether there's sufficient evidence of the oath and affirmation that he then gave. Okay, is that a constitutional issue or a rules-based issue? It is a constitutional issue. There's sufficient evidence that he gave an oath because he said, I gave an oath. We don't have to believe him, but in this context of this, we do. So, what, if that's the case, then aren't we simply dealing with the, with your contention that it wasn't properly authenticated or written down or recorded? Yes, but we think that that has a constitutional dimension. Why? Because when this, when this court has talked about affidavits or the body of information that a police officer gives to support probable cause, the court has always talked about a document. And I know that today that document can be digital. It has four corners, paper four corners, or if it's a recording, the beginning and the end of the recording. And the federal rules require that document. My question is, does the constitution require a document? And if so, tell me what case says that. Okay. The cases that I largely relied on are United States versus Anderson, which is an older case. And it talks about paper documents and four corners. Right. And that's a case in which there was a paper document and the court looks at the four corners of it. But I'm asking a different question. I'm asking... That was an unsworn paper, to let me in. Right. So is there any case... Well, there was a... What I believe is that there was a paper and then there were some things outside of the paper that the court said, we can't consider those. And just as it has said in Anderson, it said later in United States versus Long, and it said later in United States versus Hove, we don't consider things that aren't recorded. We don't consider things that are outside the four corners of whatever the issuing judge heard. And the problem in this case that has constitutional dimensions, because this court has to be able to review and district courts have to be able to later review whether there was probable cause. We have the officer's testimony. We do have the officer's testimony. Our problem with why that is not adequate and that there's a constitutional dimension to it is that facially, we know that that affidavit was prepared afterward. And therefore, we know that that particular piece of paper, the issuing judge could not have considered. It wasn't produced then. What we do have is testimony from the officer. As I understand your argument, you're making what I think is a serious point. Without a written document to confirm what the magistrate actually heard, and then all we have to rely on is the officer's, after the fact, recreation, which has not been validated by the issuing magistrate. So, for example, let's suppose we get a lot of these in Frank's hearings where portions of the application for the warrant are misrepresentations of fact and so on and so forth, and the hearing will take a look at those allegations because we know what the magistrate had before him or her, and if there are errors like that, misrepresentations, then those get excised and then the judgment is, is there still enough for probable cause? So, I don't see any allegations in this case that you think the trooper misrepresented facts or lied to the magistrate. You're just saying on its face that could be a risk and that's the principle you want us to establish. That is, without some confirmation, even if it's created by the officer, it's not validated by the issue of the official who authorized the warrant to validate it. So that's what this case boils down to for you? In part, on that particular issue. So that you're, again, your position is that if an officer in the field calls a judge and says, here's what happened, I swear, can I get a warrant, the warrant is invalid unless the judge at the time records what was said? Yes, and that's true under Alaska law. It's true under the Federal Constitution. Constitution. We're talking about the Constitution. And the reason I think that there's a constitutional dimension to this is, as Your Honor just referred to, there are many things that a reviewing court uses that document to decide. It uses it to decide whether there are Franks issues. That's true, but the hypothetical that I asked you to focus on was a hypothetical. And you're saying, well, it had to be recorded at the time. That's not what I said. What I said was, your case seems to be that there has to be a validation by the magistrate, whether it's at the time or after. It doesn't make any difference whether he recorded it or not, or he wrote notes or not. Or even he put his initials on. If he then goes to the recreation that has been proffered and validates it, then you have an after-the-fact. It doesn't have to be contemporaneous. It can be after-the-fact. I want to make sure how broadly you're going or how narrowly you're going. If that's right, is the remedy here to remand to see if the magistrate would agree this was what was said to? Your Honor, we made a motion for the court to take judicial notice that the state of the state court file is that there never was anything from the issuing judge. I understand, but this was filed in the state court file, was it not? The affidavit? The duplicate search warrant and the later prepared affidavit were in the state court file. So wouldn't it be a very simple thing to call the magistrate and say, is this the information on which you gave? Should we remand for that? I think that the government should have had to produce that information at the suppression hearing. Was there an objection at the trial on that basis? I'm sorry? Was there an objection at the trial that it was inadmissible or insufficient without the magistrate being called as a witness? During argument, after everything was in, Mr. Dodd's counsel made sure to point out that there was no affidavit, there was no evidence. We didn't know, she said, what the issuing judge considered. She made that argument. There was also some reference earlier in the transcripts, more of a housekeeping discussion about getting the issuing judge and the federal magistrate said, well, maybe we can have him testify by phone if we have to. And the government's attitude, and I have the excerpt of record site, 95 to 96, the government's counsel said, I don't think we need him. And in this case, because we've got an after-prepared affidavit and we don't have any indication from the issuing judge that he considered this body of evidence that was later prepared, I think it was absolutely necessary. Let me go back to the beginning of your position, because while we do have an after-prepared affidavit in this case, I take it your position is that issuing a search warrant based on an oral oath only is per se unconstitutional in the absence of some contemporaneous recordation of the testimony. If it's going to be oral, I would say both the rules and Alaska law required that kind of recordation. Alaska law is, as I'm sad to say in Alaska, not really relevant in this case. But it's so similar to Rule 41. But that's not the Constitution. So my question is, and I think you have to say yes, your position is that issuing a search warrant, a judge gets called up and somebody recounts information that would be probable cause. And the judge says, fine, I'm faxing you a search warrant that says, having heard the testimony of Officer Jones, I issue the search warrant, that that search warrant on its face is invalid if the judge either hasn't had a court reporter take down the stuff or if later he doesn't get something that he signs. Something that he signs, something that he says he signs. I understand. Yes, that's what I'm saying. Because we see lots and lots of oral search warrants. There are lots and lots of oral search warrants. And you're saying they're all invalid. No, I'm not saying they're all invalid. No, because they don't include, you're not saying they're all invalid, but the conditions of validity that you're putting on them appear in almost none of the cases that we see. No, Your Honor. I don't think that this should be that difficult. It must be the way I'm saying it. No, I understand your position. That's the way he's saying it. I understand your position. I'm asking you about the – And oral, the answer is, our answer is this, and I hope it answers your question. An oral affidavit, and that's just a body of information that is presented orally. By itself is insufficient to justify a search warrant. No. No, that's not what you're saying. No. It has to be recorded so that a reviewing court can determine probable cause and franks and any other issues that arise. Okay, but let me rephrase your position, because an unrecorded oral affidavit is insufficient to support a search warrant. Unrecorded in the sense that we don't know that the – Well, it's never – Unrecorded – In a case where all we have – let's not – I don't want to mix words with you because I want to – you may be right, but I want to understand the consequence of your position. Your position is that in a case where all that we have is the officer saying, I called the judge – And I told him X. And I told him this, and the judge then issued a search warrant. That search warrant is constitutionally deficient. When? Don't say anything else. No. Don't do any whens. I've given you all the facts. Yes. Is it constitutionally deficient? At that point. Not always. But in this case, yes. Now tell me when – now tell me the whens. When, not always. The when it is – there's a constitutional dimension and a constitutional deficiency is when the information that was presented orally is not reduced to some – No, I'm sorry. My hypothetical meant to say that. All we have – all we have – Is that something was said orally. Something was said orally, and the officer says, I swore to it, and then the judge then issues a search warrant. Your position is that in every case where that occurs, we have a constitutional violation. Embrace it, because that's your position. Yes. Okay. Yes. Yes. You're defining the oral affidavit as something where we don't have the details of it, but he said he did it. Or a sworn statement, if you will. Okay. That's your position. A sworn statement, and all we know is that it was a sworn statement. We don't know what it said. You may well be right, and I'm sorry for pushing you. I just want to – Okay. I want to understand the consequences of your position. No, it worries me about – It doesn't have to be telephonically or recorded. It could be the magistrate's notes taken while this guy was at home or out at a restaurant. You know, I think there are going to be grades of reliability to it. But it would have to be corroborated by the magistrate. By the issuing judge, yes. Okay. Yes. I mean, nowadays, I think an officer could type his affidavit in an e-mail, and the phone conversation could conceivably consist of, Officer, is everything in this e-mail that I just got from you true? Yes. Boom. Okay. So there are a couple of things I also noticed about the record I'm preparing here. There's a duplicate original search warrant prepared by the officer, which is required under Alaska law. There's got to be something. And there is actually no signature of the judge on it by the officer for the judge. He printed the judge's name where it says type or print name, but he never signed it. But he did sign the first one. Signed the first one. Did the judge sign a search warrant at the time that he got called? That's what we don't have here. No, he did not. That's what the state file – right. We don't have that. It's not in the file. It's not in the file, and it's not, we believe, in the state file. All we know is that the officer signed. The officer printed the judge's name where it says type and print. The officer could have signed for the judge. Right. And so right off the bat, in our view, we have both a Fourth Amendment and an Alaska state law question about whether this is a search warrant, because one thing I noted is that Alaska Statute 12.35.120 reflects that the definition of a search warrant is either something signed by the judge or signed for him. It doesn't matter if Alaska law was complied with here, does it? I would think that constitutionally, federally, constitutionally, we'd like a judge to sign a warrant. I love Alaska, but it doesn't define the Constitution. Okay. I think under the Fourth Amendment, we'd like the judge to sign the warrant.  Or we'd like the officer to sign for him. That's fair, but I think your continued references to Alaska law don't help me. Okay. And so we think that this was not a document, the four corners within which there's probable cause. And I just wanted to make a quick comment on the burden of proof here. The government said that we carried that burden, and we think that we certainly came forward with evidence with this warrant that has many deficiencies in it, and the government could easily have responded. So we think we carried any initial burden we may have had. Now, the next issue that comes up here is what's in this affidavit. If the court assumes that it is a proper oath and affirmation, even though the issuing judge didn't say this is what I heard, what's in this affidavit are a number of observations that this officer made after going onto Mr. Dodd's property. I think we have all of that. We've got it all, Ms. Okay. You're over it. Yeah, I'm not going to go through that. Why don't we hear from the government, and then I'll give you a minute or two for rebuttal. Good morning, Your Honors. My name is Joanne Farrington. I represent the government in this case. There's no doubt that there's a problem created by the fact that for whatever reason, and we don't know the reason, it's not in the record, that the oral statements that Trooper Cooper provided to the judge establishing probable cause weren't recorded. That does cause problems, but I'd submit it's not the constitutional problem. We've got rather far afield from the language of the Fourth Amendment, which says only that warrants be issued upon probable cause supported by oath or affirmation. There's no dispute in this case that Trooper Cooper was placed under oath. There's no dispute that he then gave evidence to the judge, and there's no dispute that the judge then authorized Trooper Cooper to sign the warrant on his behalf that he then executed the search warrant for the house. Okay, but the Fourth Amendment doesn't, on its face, preclude the argument that in order to establish probable cause, that it has to be probable cause found by the magistrate, and the reason for all the rules is that you want to know what the magistrate took into account in deciding that there was probable cause. So envision this case where the Trooper Cooper was a bad cop, and he was exaggerating the evidence that he was presenting, and the magistrate, and he was misrepresenting it, and he was lying, and whatever. And we have the same record. All we have is a warrant that issued under oath, even though if one knew exactly what had in fact been said, which isn't in the recreation, we would have found that there was a constitutional violation. Correct? That theoretical possibility is correct. And it may be that the lack of a recorded affidavit would create problems in the event that there was a plausible... that the magistrate validates as an accurate portrayal of what he or she was told in order to find the probable cause that caused that magistrate to issue the warrant that was obtained under oath. Those may be problems, Your Honor, but that's not part of the Fourth Amendment. The Fourth Amendment requires that the issuing magistrate find probable cause. Here we have the warrant in which the issuing magistrate says that he's found probable cause. So the question becomes... Here's my... I'm dealing with the hypothetical, you know, it's the implication. There are implications going both ways. And I'm trying to explore with you the implication of a rule that says, and after the fact affidavit created by the lying cop, it's not otherwise corroborated, there's no other corroboration except what the officer says he told the magistrate, which in fact may have been a total lie. Okay? And so if the end of the inquiry and the end of the Fourth Amendment is once the magistrate issues the warrant and the officer stands up and says, I swore under oath and here's the evidence of what I said, which may not tailor at all with what the magistrate heard, that there's no constitutional violation? No, I don't think there is a constitutional violation. The issue then becomes, was there probable cause? And in some cases that would be hard to establish. There may be a lack of memory, the witnesses may be unavailable. In this case, however, we are very confident that there was probable cause communicated to the magistrate because we have very clear evidence as to what was communicated to the magistrate. And it's more than just Trooper Cooper's affidavit, which he prepared as soon as he heard that there was a problem. Okay, well you're going by my hypothesis. There is corroboration. There is corroboration, so it's not just Trooper Cooper's affidavit, which he prepared immediately, and presumably accurately reflected his memory at that point within a matter of days. But his fellow trooper, Trooper Hayes, testified to exactly what happened as well when they approached the house. He testifies as to the existence of probable cause. He didn't testify as to the communication of it to the magistrate. Well, that's true, but we know. Let's assume you've got boatloads of probable cause here, just for purposes of discussion. The question is the validity of the warrant. And one question I have for you is, since a warrant was issued, are you making a good faith argument in this case? Well, there certainly is a good faith argument. I think there may well be. I'm asking whether you've made one. Have you made one? And Leon was argued extensively. In the briefs? Yes. In our briefs? Yes. Okay, so why, and that's where I'm getting to, it's argued in our case, why isn't that dispositive? Oh, I think it is. At the end of the day. Look, the officers did what he was supposed to do. He did. The officer called the judge. Then immediately thereafter recorded. There were failings on the judge's part. It seems to me that this is not the case in which we need to get into whether or not in another case, whether or not oral recordation is required. It may well be required in a different manner than it occurred here, but the officers certainly didn't do anything wrong. I think that's absolutely true. And that, it seems to me, is the more fruitful way for us to approach this, rather than defend the notion that the magistrate shouldn't have recorded what was said to him. On the other hand, we've had a very good discussion of the warrant clause and the probable cause of the Constitution. And I didn't give your colleague trouble about that because I'm not sure what her answer is. You can come back to it later. But it seems to me if I were the government, that's what I'd be arguing here. Well, and we did. Liana is briefed. The argument from the defense was that by not recording this exchange, somehow Judge Smith abdicated his judicial role and became part and parcel of the investigative team and under the final prong of Leon's bad faith. The except, yeah. There's just no evidence at all. We don't know why it wasn't recorded. We can speculate. He was out. He wasn't at the courthouse. We actually don't know that. The trooper said he didn't know where he was, except that he wasn't at the courthouse. He wasn't at the courthouse. And when he's at the courthouse, you have all the facilities available to you. That's right. And we can speculate that that's why it wasn't recorded, that for some reason the judge didn't think about the fact that it should have been recorded. But that's not abdicating your judicial role. That's making a mistake. Can I ask you a question about the defendant's probationary status? I take it that the search could have occurred pursuant to the conditions of his probation, but he wasn't home at the time. That's correct. Well, he was home, actually. He didn't answer the door. He did not answer the door. Does that have any relevance to the legality of the search in this case? The district court did cite that fact, suggesting that it lowered his reasonable expectation of privacy with respect to the surroundings of the house. Well, I guess I'm asking you differently. They could have come in and searched since he was there without a warrant. That's correct, absolutely. They went and got a warrant, which may be insufficient, according to the other side's argument. Are they excused from any insufficiency because the search would have been legal in any event? Or is there some requirement that he open up the door and let them in in order? We don't rely on this as being a probation search. We're not looking at it. It was a good faith search pursuant to the warrant. And without some indication that either the officer was proceeding in bad faith or that the judge somehow had lost his judicial perspective, I do think that Leon is a fairly easy way to resolve this aspect of the case. What do you do with the signature in this case on the warrant? Well, I think the judge's name is written on the warrant. I don't think that it has to be done in cursive. The judge authorized Trooper Cooper to sign the warrant on his behalf. Can a judge authorize a law enforcement officer to prepare the warrant? Under the Alaska statute, what ordinarily happens is the officer fills in the warrant. It's a check-the-box kind of warrant. And then the judge either signs it or stamps it. Well, I'm talking about the telephonic procedure. And then the officer reads the warrant back to the judge, and the judge authorizes him to sign the warrant. And what was the testimony in this case about that? Is that what occurred here? There actually was no testimony to that event because that aspect of it was not raised by the defendant. The only aspect that was challenged was the fact that the probable cause statement had not been recorded. So the facial sufficiency of the warrant was not an issue? Was not raised at the correction hearing. That's correct. So those facts just weren't explored as to exactly how that transpired. So I want to just point out that our debate, our discussion about the necessity of having a document that we can all look at and review. Days back to 1969, my former boss's dissent from the denial of cert, Justice Brennan, and that was the year after I left, so I wasn't involved in it. But I don't mind channeling Justice Brennan and Justice Marshall at least to raise the issue. So I think it's a useful discussion. And there are many interesting hypotheticals that you could think of. There are. For example, a hurricane hits New Orleans and judicial records are destroyed. We have no copies of affidavits of cases that are on appeal. Does that mean that all those warrants are now invalid because there's no written record anymore? And even if we can reconstruct, as we did in this case, even if we can reconstruct what was told to the magistrate to support the finding of probable cause? I don't think so. Can I ask you about one issue that your opponent didn't have a chance to get to?  Why is it relevant? The mother says, I bought and stored firearms for Mr. Dodds. Well, there are two primary reasons why the district court concluded that it was relevant. The focus in the trial ended up being its relevance to explain Rosemary Jackson's relationship with Mr. Dodds, what they did together, and the fact that she was testifying against him. How it came to be that she was testifying against him. It added to her credibility. She had functioned as a surrogate purchaser for him because he was a felon and could not purchase firearms himself. The other fact is this court's repeated recognition of the close connection between firearms and drug trafficking, and the fact that possession of quantities of firearms, particularly when they are stored with the proceeds of the drugs, are relevant evidence to drug trafficking. Those two were both relied on by the district court judge. Any potential prejudice from that evidence was vastly diminished, both by a cautionary instruction from the judge, and more importantly by the prosecutor herself telling the jury that they really shouldn't consider those firearms against Mr. Dodds, but they should use it so they understand Ms. Jackson's relationship with him and what she was doing there. I don't think that that was error on the part of the district court. It certainly wasn't an abuse of discretion. It was not irrational. It was founded in the facts. The judge carefully considered the admission of this evidence on three different occasions, pre-trial, at the time it was admitted, and then later with a motion for new trial, and articulated her reasons very clearly. Thank you, Your Honors. Thank you. Thank you. Ms. Sun, I'll give you a minute to respond. You might want to address the good faith issue that Judge Hurwitz raised. What we said originally, what we say is that this case falls outside the good faith exception because it is enough like Logi Sales v. New York, which is one of the exceptions that was identified in Leon, or one of the situations identified in Leon as being one in which there can't be good faith, and the court simply will not book that there was good faith in execution of the warrant. Logi Sales v. New York involved an issuing judge who went to the scene of a smutty books and films store and participated in going through some of the items and then left. That's not our case. Well, I just want to remind the court that that's what we have. And that was defined as abdicating his judicial role. In that case, it was because he abdicated to the officers exactly what items and probable causes. So his abdication here, in your view, was not initialing the affidavit? Your Honor, what happened here is that— Well, but had he done that, in your view, everything would have been all right. Yes. So then, therefore, your view is that, in this case, he abdicated his judicial role by not initialing the affidavit. Right. And the word I thought of as I was listening to the government is, it's not so much a matter of unrecorded, it's a matter of unpreserved. Unpreserved by the judge, his basis for finding probable cause. And so where we think the issuing judge abdicated his responsibility here is in not preserving, even after the fact. He may have abdicated his responsibility, but the case you cite talks about abdicating the judicial role. And that's a case where a judge becomes— Part of the search team. Part of the search team, a witness, rather than a neutral magistrate. Also, it was a scope of the warrant, more of a focus of his— Right. That case involved a different kind of abdication, but we nonetheless think that it's an abdication here that was important because courts review affidavits to determine probable cause. So there has to be a preserved affidavit for that purpose. And with respect to good faith, if I can very quickly, one of the things that courts do is a cost and benefit analysis. This is a case in which it is very easy to impose on the government a very small burden, which is simply to get some indication from the issuing judge that the body of information the prosecution is presenting is what the issuing judge considered. It's a small and simple thing that we could easily ask the government to do. And because of that, that's another reason the good faith exception should not apply here. And then there's a more conventional analysis on probable cause. We do believe that if you excise the— We've got all that from the briefs. Okay. Thank you, Ms. Sun. And thank you, counsel. We appreciate your arguments. Interesting case. Interesting case. That matter is submitted. We're going to take a 10-minute recess before we hear our next case.
judges: Fisher, Paez, Hurwitz